UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

ANDRAE KEVIN RILEY,

                         Plaintiff,                   DECISION AND ORDER

             -vs-                            18-CV-6538-MJP

COMMISSIONER OF SOCIAL SECUIRTY,

                         Defendant.

───────────────────────────────

## INTRODUCTION

Plaintiff Andrae Kevin Riley ("Riley") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c) the parties have consented to the disposition of this case by a United States magistrate judge. (ECF No. 16.)

Presently before the Court are cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF Nos. 11 & 14.) For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted and Riley's motion for judgment on the pleadings is denied.

## PROCEDURAL BACKGROUND

Plaintiff filed for benefits on March 9, 2015, alleging disability beginning on February 26, 2015, based on a right hand injury, a right leg injury, and mobility issues. (R.[1] 19–34.) The Social Security Administration denied his claim. A hearing was held on April 20, 2017, before an Administrative Law Judge ("A.L.J."). A vocational expert also appeared and testified at the hearing.

The A.L.J. issued a Decision on June 9, 2017, finding that Plaintiff was not disabled from February 26, 2015, through June 9, 2017, under Sections 216(i) and 223(d) of the Social Security Act. (R. 22.) Plaintiff appealed to the Social Security Administration's Appeals Counsel and that body denied his request for review on May 22, 2018, making the A.L.J.'s decision the Commissioner's final decision. Plaintiff filed this lawsuit on July 19, 2018.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). It directs that when considering a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial

---

[1] Record of Proceedings before the Social Security Administration. (Feb. 4, 2019, ECF No. 9.)

evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

To determine whether substantial evidence supports the Commissioner's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the A.L.J. must employ a five-step

sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1)    whether the claimant is currently engaged in substantial gainful activity;
>
> (2)    if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3)    if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4)    if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and
>
> (5)    if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## RILEY'S CONTENTIONS

Riley claims that he raises two issues for the Court to review, but then, from the organization of the brief, appears to only assert that the A.L.J. erred at step two. (Pl.'s Mem. of Law at 2, Apr. 5, 2019, ECF No. 11-1.) Under the heading titled, "Issues," he wrote only this: "1. Did the A.L.J. Err in Finding Plaintiff's Knee Injury to be Nonsevere?" (*Id.*) Following the heading marked

4

"C. Argument," he contends only that the A.L.J. erred in finding that Riley's knee impairment was not severe. (*Id.* at 8–9.) However, by page 11 in his memorandum, it appears that Riley also challenges the A.L.J.'s finding regarding his residual functional capacity ("RFC"). (Pl.'s Mem. of Law at 11–12.) As part of that challenge, Riley alleges that the A.L.J. substituted his own opinion for those of the medical experts. (Pl.'s Mem. of Law, 11-1 at 10.) Finally, Riley asserts that "[t]o the degree that [medical] opinions were internally inconsistent or inconsistent with the record, the A.L.J. should have recontacted the physicians." (Pl.'s Mem. of Law at 12.)

Riley's argument for his step-two error is: "[M]ultiple opinions found moderate or greater limitations with regards to the Plaintiff's ability to stand, and imaging did show degenerative changes in the Plaintiff's knee." (Pl.'s Mem. of Law at 8.) According to Riley, the A.L.J. should have found that his knee impairment was severe at step two because it is a "*de minimis*" standard. (*Id.* at 9.)

Riley also contends that the A.L.J. improperly "cherry-picked" evidence by relying on some statements from a source to support his conclusion that the knee impairment was not severe, while ignoring other substantive detail to the contrary from the same source without providing plausible reasons. (*Id.* at 11.) In particular, Riley asserts that the A.L.J. erred in utilizing only portions of the following opinion evidence:

1. Harbinder Toor, M.D.'s, April 7, 2015, Orthopedic Examination (R. 289–92);

2. Sharon Glezen, M.D.'s, July 24, 2015 and July 30, 2015, visits, wherein Riley sought completion of paperwork for determination of employability (R. 537–40; 658–59.);

3. Bohdan Klymochko, D.O.'s, November 11, 2016, examination for completion of paperwork (R. 545–48.); and

4. Alan Lorenz, M.D.'s, March 4, 2017, examination. (R. 596–600.)

(Pl.'s Mem. of Law at 12.)

## ANALYSIS

### *The A.L.J. did not err at step two of the sequential analysis.*

The Court concludes the A.L.J. properly determined that Riley's knee impairment was not severe at step two in which he indicated that:

> Although the claimant has a history of a right knee injury with a remote surgery, the evidence of record since the alleged onset date suggests stability of this impairment with no anticipated vocational restrictions. Accordingly, I find the claimant's history of right knee injury is a non-severe impairment.

(R. 24.)

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012). Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that

a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-CV-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original).

The Court finds that the A.L.J. correctly viewed the record as a whole and determined that Riley did not have a severe impairment with respect to his right knee as the clinical medical evidence does not support such a finding. Riley's treatment with regard to his right knee was conservative and clinical observations are inconsistent with a finding of a severe right knee impairment. An April 8, 2015, an x-ray of Riley's right knee showed "no evidence of acute fracture, dislocation or destructive bony lesion. The joint spaces are relatively well maintained." (R. 293.) In early April 2015, Riley attended an orthopedic examination with Harbinder Toor, M.D., who found that Riley was in no acute distress, his gait was slightly abnormal with a slight limp to the right, and that Riley could perform 20% of a full squat. (R. 290.) Dr. Toor also noted that Riley had difficulty getting on and off the exam table and difficulty getting out of a chair but did not need help getting ready for the exam. (*Id.*)

Riley saw Robert Bronstein, M.D., an orthopedic surgeon, on April 26, 2015, for his right knee pain. (R. 386.) Dr. Bronstein performed an examination of Riley's right knee during that appointment and indicated that Riley

> has no effusion. Range of motion 0–130°. He has no tenderness over the quadriceps tendon, patella, patellar tendon, or tibial tuberosity. He has no medial or lateral patellar facet tenderness. He does have medial and lateral joint line tenderness. The knee is stable to varus and valgus stress with a 1 + Lachman examination negative posterior drawer. On circumduction maneuvers he has no trapping. Radiographs today are within normal limits following a previous ACL reconstruction.

(R. 382.) Dr. Bronstein indicated that he was going to send Riley for an MRI to determine if there was a possible meniscal tear in his right knee. (R. 387.) Riley thereafter underwent an MRI scan, the findings of which were as follows:

> (1) Status post ACL repair. The graft is intact. (2) Oblique tear of the posterior horn of the medial meniscus as seen on prior exam, stable. Small tear of the anterior horn lateral meniscus. Suspected postoperative changes to the lateral meniscus which is diminutive. (3) Tricompartmental degenerative changes slightly progressed in the medial and lateral compartments.

(R. 381.)

Riley returned to Dr. Bronstein following the MRI examination of his right knee and Dr. Bronstein's impression was that there was "[n]o evidence of significant meniscal pathology. ACL graft is intact. Does have some degenerative disease in the knee." (R. 396.) Dr. Bronstein then indicated that there was "[n]o surgical indication at this time" and that Riley would start a rehabilitation program. (*Id.*) Riley then returned to Dr. Bronstein on July 16, 2015, during which Dr. Bronstein's physical examination revealed that Riley's range of motion for his right knee was to full extension of 110 degrees of flexion.

(R. 416.) Dr. Bronstein found that the MRI showed no evidence of internal derangement of the right knee at that time. (*Id.*)

Riley's right knee was also examined by Sharon Glezen, M.D., in July 2015. (R. 537–40.) Although Dr. Glezen found that Riley had a limited range of motion and had an "abnormal" squat, she also noted that his gait and heel and toe walking were normal. (R. 539–40.) Dr. Glezen examined Riley's right knee again in October 2015, finding that he had a normal gait, normal heel and toe walking and a normal squat. (R. 671.) In February 2016, Bohdan Klymochko, D.O., examined Riley and found that he had grossly intact motor function and sensation. (R. 551.) Dr. Klymochko also indicated that the right knee had no edema, a 5/5 strength and mild instability. (*Id.*) Riley saw Dr. Klymochko again in November 2016, during which the doctor found that Riley's gait and heel and toe walking were normal, but that he was unable to squat fully due to his right knee. (R. 547.) Dr. Klymochko also found that Riley had a limited range of motion in his right knee. (R. 548.) This objective medical evidence demonstrates that there was substantial evidence upon which the A.L.J. determined that Riley did not suffer from a severe knee impairment at step two of the sequential evaluation process.

However, even if the A.L.J. erred in his finding that Riley's right knee impairment was not severe at step two of the analysis, this error is harmless if the A.L.J. continues to consider the knee impairment in the rest of his analysis, including the RFC. An error at step two may be harmless if the A.L.J.

identifies other severe impairments at step two, proceeds through the remainder of the sequential evaluation process and specifically considers the "nonsevere" impairment during subsequent steps of the process. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (Summ. Order). The A.L.J. did just this, considering Riley's "non-severe" knee impairment, together with Riley's severe right hand impairment, in the RFC analysis. (R. 24–30.) Accordingly, any alleged error at step two was rendered harmless.

### *The A.L.J. Properly Evaluated the Opinion Evidence in the Record.*

While not clearly articulated in his memorandum of law, it appears that Riley is also challenging the A.L.J.'s RFC finding, alleging that it was improper for the A.L.J. to "rely on some statements from a source to support a conclusion, while ignoring other substantive detail to the contrary from the same without articulating a plausible reason." (Pl.'s Mem. of Law at 11–12.) In particular, Riley contends that the A.L.J. improperly weighed medical opinions provided by: (1) Dr. Toor on April 7, 2015 (R. 289–94); (2) Dr. Glezen on July 24, 2015 (R. 658–59), and July 30, 2015 (R. 537–40); (3) Dr. Klymochko on November 25, 2016; and (4) Dr. Lorenz on March 4, 2017 (R. 595–600). Riley further asserts that an A.L.J. cannot substitute his own opinion for that of an expert who submitted an opinion. (Pl.'s Mem. Law at 10.) The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

An A.L.J. is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013), citing, *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")); *Dougherty-Noteboom v. Berryhill*, 2018 WL 3866671, *9 (W.D.N.Y. 2018) ("[e]ven where the A.L.J.'s determination does not perfectly correspond with any of the opinions of the medical sources ..., the A.L.J. was entitled to weigh all of the evidence available to make a [RFC] finding that was consistent with the record as a whole"). Pursuant to the Commissioner's regulations:

> The ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the ... physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484 at *4 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted). "An A.L.J. does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

### 1. Harbinder Toor, M.D.'s Opinion

Dr. Toor conducted an orthopedic examination of Riley on April 7, 2015, by referral from the Division of Disability Determination. (R. 289.) Dr. Toor found that Riley appeared to be in no acute distress. (R. 290.) He also found that Riley's "[g]ait was slightly abnormal, slight limping to the right side." (*Id.*) Dr. Toor found that heel to toe walking was difficult for Riley. (*Id.*) Riley could squat 20% of a full squat, with pain in the right knee noted. (*Id.*) Riley's station was normal. (*Id.*) Dr. Toor noted that Riley did not need help changing for the examination, but had difficulty getting out of the chair and getting on and off the exam table. (*Id.*) Dr. Toor further found that Riley's "[r]ight knee flexion and extension [to be] 140 degrees." (R. 291.) Riley had tenderness and slight swelling in his right knee. Riley had 5/5 strength in his proximal and distal muscles bilaterally, no muscle atrophy, sensory abnormality, joint effusion, inflammation or instability. (*Id.*) Finally, Dr. Toor found that Riley's reflexes were physiologic and equal. (*Id.*) Dr. Toor opined that Riley sustained an injury to his right knee and that his prognosis was "fair." (*Id.*)[2] Dr. Toor concluded that Riley had moderate limitations with standing and walking a long time and that pain interfered with his balance. (*Id.*)

---

[2] Under the section labeled "Diagnosis" in Dr. Toor's report he listed both Riley's hand injury and knee injury. Directly below the "Diagnosis" section is a section labeled "Prognosis." However, it is unclear from the report whether the prognosis provided refers to Dr. Toor's diagnosis of a right hand injury, a right knee injury or both.

The A.L.J. assigned "partial weight" to Dr. Toor's opinion, crediting his findings regarding Riley's right hand injury, but indicating that "the record reveals minimal symptoms affecting [Riley's] standing, walking, and balancing abilities," thus crediting less weight to that portion of the opinion. (R. 28.)

Moreover, as a consultative examiner, Dr. Toor's opinion was not entitled to controlling weight. *See Pagano v. Comm'r of Soc. Sec.*, No. 16-CV-6537-FPG, 2017 WL 4276653 at *5, 2017 U.S. Dist. LEXIS 158656 at *12–13 (W.D.N.Y. Sept. 27, 2017) ("a consultative examiner's opinion is generally entitled to 'little weight,' because their examinations are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day") (internal quotations and citations omitted).

The Court finds that the A.L.J. provided good reasons supported by substantial evidence for the weight given to Dr. Toor's opinion. Based upon the forgoing, remand is not warranted on this basis.

### 2. Sharon J. Glezen, M.D.'s Opinions

The Record contains two relevant medical statements from Dr. Glezen. On July 24, 2017, Riley saw Dr. Glezen for the completion of a physical assessment for determination of employability. (R. 537.) Dr. Glezen's physical examination of Riley revealed that he had a normal gait, his heel and toe walking was normal and that he had limited flexion when squatting. (R. 539.) She also noted that Riley had a limited range of motion and mild swelling of his right knee. (R. 540.) Dr. Glezen opined that Riley was unable to lift more

than twenty pounds, was unable to stand or walk more than an hour per shift and that heights and unstable areas were contraindicated. (R. 538.) She further found that Riley was "very limited" in walking, standing, pushing, pulling and bending (*i.e.*, 1–2 hours a work day). (R. 540.)

The A.L.J. assigned "little weight" to Dr. Glezen's opinion, finding that it overestimated Riley's functional restrictions with respect to his right knee. (R. 29.) The A.L.J. explained that even though Riley complained of right knee pain "he frequently demonstrated an intact gait with no difficulty heel/toe walking, and there is little evidence to support a finding that he has any limitations with weightbearing or postural activities." (*Id.*)

The A.L.J.'s assignment of "little weight" to Dr. Glezen's July 24, 2015 opinion is consistent with the record as a whole. In addition, Dr. Glezen's opinion is entirely contradictory to the results of her physical examination of Riley conducted less than three months later on October 2, 2015. (R. 544.) In a report from that examination, she listed "no evidence of limitations" for walking, standing, or sitting. (*Id.*)

Dr. Glezen's physical examination of Riley on October 2, 2015, again for the purpose of a physical assessment for determination of employability, does not contain an opinion regarding Riley's right knee. (R. 541–544.) In fact, during her physical examination of Riley, Dr. Glezen found that Riley had a normal gait, normal heel and toe walking and a normal squat. (R. 543.)

The A.L.J. assigned "partial weight" to Dr. Glezen's October 2, 2015, opinion, writing:

> I assign partial weight to this opinion, agreeing that the claimant has no significant walking, standing, sitting, seeing, hearing, or speaking limitations, but finding the remaining portions of this opinion to overestimate claimant's . . . right knee restrictions. Furthermore, this opinion is internally inconsistent, in that although it found minimal standing/walking/sitting limitations, it went on to state that the claimant could not perform any work activity.

(R. 29.)

Dr. Glezen's October 2, 2015, opinion is inconsistent with the record as a whole, which demonstrates only benign treatment of Riley's right knee after his surgery. The A.L.J. provided good reasons supported by substantial evidence for granting partial weight to the opinion. Based upon the forgoing, remand is not warranted on this basis.

### 3. Bohdan Klymochko, D.O.'s Opinion

On November 29, 2016, Dr. Klymochko conducted a physical assessment for determination of employability. (R. 545.) Dr. Klymochko's physical examination of Riley revealed a normal gait, normal heel and toe walking, but an "abnormal" squat in that Riley was "unable to squat fully due to R knee." (R. 547.) Dr. Klymochko also found that Riley's right knee had a limited range of motion in flexion. (R. 548.) He opined that Riley was "very limited" (*i.e.*, 1–2 hours a work day) for the following: walking, standing, sitting, pushing, pulling and bending. (*Id.*) Dr. Klymochko concluded that Riley was "permanently disabled." (R. 546.) This examination contradicts Dr. Klymochko's earlier

examination of Riley on February 2, 2016, in which he found no edema of his right knee, a 5/5 strength and only mild instability. (R. 551.)

The A.L.J. assigned little weight to Dr. Klymochko's November 2016 opinion, explaining that "the evidence regarding the claimant's right knee impairment is slim and does not support such drastic weight-bearing restrictions" as suggested by Dr. Klymochko. (R. 29.) The A.L.J. also assigned little weight to Dr. Klymochko's conclusion of disability as "vague, conclusory and [ ] an issue reserved to the Commissioner." (*Id.*)

The A.L.J.'s assignment of "little weight" to Dr. Klymochko's opinion is consistent with the record as a whole and provides concrete reasons supported by substantial evidence. In addition, Dr. Klymockho's opinion contradicts his physical examination of Riley conducted earlier in 2016. Moreover, the A.L.J. correctly gave little weight to Dr. Klymochko's finding that Riley was permanently disabled as the authority to determine disability rests with the Commissioner. *Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015) ("The ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner.") (citations omitted). Based upon the forgoing, remand is not warranted on this basis.

### 4. *Alan Lorenz, M.D.'s Opinion*

Dr. Lorenz saw Riley on March 4, 2017, for a physical related to Riley's claims before the Social Security Administration. (R. 596.) Dr. Lorenz noted that Riley reported he could walk zero city blocks but opined that Riley did not need to include periods of walking around during the workday and noted that

Riley did not need to take any unscheduled breaks. (R. 597–98.) Dr. Lorenz also noted that Riley's leg(s) did not need to be elevated and he did not need to utilize any assistive device. (R. 598.) Dr. Lorenz found that Riley could only "rarely" lift 10 pounds and could never lift anything heavier than that. (*Id.*) Dr. Lorenz opined that Riley would miss four days a month as a result of his impairments. (R. 599.)

The A.L.J. assigned "partial weight" to Dr. Lorenz's opinion, "agreeing that the claimant has no sitting limitations, did not require breaks . . . a sit/stand option or any assistive devices. However, the remaining portions of this opinion overestimate the limiting effects of the claimant's . . . right knee impairment[], considering the claimant's physical examinations and conservative treatment history." (R. 30.)

The A.L.J. properly considered and weighed Dr. Lorenz's opinion relating to Riley's right knee impairment. The A.L.J. specifically articulated that portions of Dr. Lorenz's opinion were not supported by the physical examinations and the conservative treatment of Riley's right knee. For these reasons, remand is not warranted.

### The A.L.J. Did Not Substitute His Own Opinion for That of Medical Experts.

Riley asserts that the A.L.J. "set his own expertise against that of an expert who submitted an opinion." (Pl.'s Mem. of Law at 10.) Where the A.L.J. explains why he credited some portions of the medical opinion evidence and did not credit others, he has not substituted his own opinion for that of a

medical source. *Rivera v. Berryhill*, 312 F. Supp. 3d 375, 380 (W.D.N.Y. 2018) (finding that A.L.J.'s determinations with respect to weighing of opinion evidence was proper where the "A.L.J. discussed the medical opinion evidence, set forth his reasoning for the weight afforded to each opinion, and cited specific evidence in the record which supported his determination."). The A.L.J. carefully reviewed the medical evidence in the record, including the results of Riley's physical examinations, and explained in each instance why he credited some portions of the opinion evidence over others. For this reason, the A.L.J. did not substitute his own opinion for that of any medical source.

### The A.L.J. Was Not Required to Contact Medical Experts Who Provided Opinions That Were Internally Inconsistent or Inconsistent with the Record.

Riley asserts that where the A.L.J. discounted certain opinion evidence as being internally inconsistent or inconsistent with the record he had an obligation to "recontact" those physicians regarding their opinions. (Pl.'s Mem. of Law at 10, 12.) "It is well established in this Circuit that 'where there are no obvious gaps in the administrative record, and where the A.L.J. already possesses a 'complete medical history,' the A.L.J. is under no obligation to seek additional information in advance of rejecting a benefits claim." *Jennings v. Colvin*, No. 13-CV-834, 2014 WL 3748574, at *5 (W.D.N.Y. July 29, 2014) (citing *Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999)) (citation omitted). An A.L.J. is only required to recontact a medical source if the records received were "inadequate . . . to determine whether [Plaintiff was] disabled."

*Brogan–Dawley v. Astrue*, 484 Fed. App'x. 632, 634 (2d Cir. 2012). As explained

by the Second Circuit:

> The mere fact that medical evidence is conflicting or internally
> inconsistent does not mean that an A.L.J. is required to re-contact
> a [ ] physician. Rather … the A.L.J. will weigh all of the evidence
> and see whether [he] can decide whether a claimant is disabled
> based on the evidence he has, even if that evidence is internally
> inconsistent.

*Micheli v. Astrue*, 501 Fed. App'x. 26, 29–30 (2d Cir. 2012); *see also* 20 C.F.R.

§ 404.1520b(b) ("If any of the evidence in your case record, including any

medical opinion(s), is inconsistent, we will weigh the relevant evidence and see

whether we can determine whether you are disabled based on the evidence we

have.").

The Court finds no gap in the record as to the opinions provided by Drs.

Toor, Glezen, Klymochko, or Lorenz. Because the record already contained

adequate evidence for the A.L.J. to reach a decision and substantial evidence

supported the A.L.J.'s RFC determination, the A.L.J. was not required to

further develop the record by recontacting the physicians at issue. Indeed, the

A.L.J. resolved any inconsistencies by relying on and weighing the evidence he

had and reviewing the record as a whole, which was the most efficient and

appropriate source. *Quinn v. Colvin*, 199 F. Supp. 3d 692, 710 (W.D.N.Y. 2016).

Finally, Defendant correctly argues that the regulations regarding

recontacting physicians were amended and that those in effect at the time

Riley filed his claim did not include any requirement that the A.L.J. first

recontact a medical source upon discovering a conflict in Riley's medical

record.[3] The regulations valid at the time of the A.L.J.'s decision provided, "[i]f any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." 20 C.F.R. § 404.1520b.[4] As explained above, the A.L.J. had sufficient evidence in the record to make his determination and properly weighed the opinion evidence. For these reasons, remand is not warranted on this issue.

## CONCLUSION

The Court finds that the Commissioner's denial of DIB was based upon substantial evidence and was not erroneous as a matter of law. Accordingly, the A.L.J.'s decision is affirmed. For the reasons stated above, the Court grants the Commissioner's motion for judgment on the pleadings (ECF No. 14). The

---

[3] The regulations were revised, effective March 26, 2012, to wholesale remove the provision stating,

> We will first recontact your physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e) (prior to amendment).

[4] The current version of 20 C.F.R. § 404.1520b "How We Consider Evidence," was effective March 27, 2017, and applies to claims filed on or after March 27, 2017. Prior versions of agency regulations are available on Westlaw. From the current version of the regulation on Westlaw, click on "History" tab, then "Versions." The version applicable to the A.L.J.'s decision is 20 C.F.R. § 404.1520b "How We Consider Evidence," effective from March 26, 2012 through March 26, 2017.

Court denies Riley's motion for judgment on the pleadings (ECF No. 11). The

Clerk will enter judgment for the Commissioner and close this case.


**IT IS SO ORDERED.**

DATED:        March 5, 2020
                      Rochester, New York

/s/ Mark W. Pedersen
MARK W. PEDERSEN
United States Magistrate Judge
